E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
CASSIE D. PALMER (Cal. Bar No. 268383)
Assistant United States Attorney
Public Corruption & Civil Rights Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0363
     Facsimile: (213) 894-6436
     E-mail:    cassie.palmer@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 8:21-00187-JVS |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT JOHN ABEL BACA'S APPLICATION FOR REVIEW OF ORDER SETTING CONDITIONS OF RELEASE PURSUANT TO 18 U.S.C. § 3142 |
| v. | |
| JOHN ABEL BACA, | |
| Defendant. | Hearing Date: N/A<br>Hearing Time: N/A<br>Location:   Courtroom of the Hon. Rozella A. Oliver |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Cassie D. Palmer, hereby files its Opposition to Defendant John Abel Baca's Application for Review of Order Setting Conditions of Release Pursuant to 18 U.S.C. § 3142 (Dkt. 59-1).

//

//

This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: January 13, 2023            Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division


          /s/
CASSIE D. PALMER
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                              PAGE

MEMORANDUM OF POINTS AND AUTHORITIES...................................1
I.    INTRODUCTION & BACKGROUND........................................1
      A.   Factual Background Relating to Charges.....................1
      B.   Subsequent Investigation and Criminal Charges Against
           One of Baca's IPD Informants...............................3
      C.   Baca's Substantial Financial Resources.....................4
      D.   Procedural History Relating to Detention & Bond............6
      E.   Instant Application........................................7
II.   ARGUMENT.........................................................8
III.  CONCLUSION......................................................12

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

Defendant John Abel Baca has filed an Application for Review of Order Setting Conditions of Release Pursuant to 18 U.S.C. § 3142 ("Application"). (Dkt. 59-1.) At his first detention hearing, defendant was detained pending trial, because the Court concluded that no condition or combination of conditions would reasonably assure his appearance as required or the safety of any person or the community. (Dkt. 14.) Defendant later submitted an application for reconsideration, which included a substantial cash and property bond. (Dkt. 26.) At the hearing on that application, the Court granted defendant's release based upon strict conditions, including an appearance bond of $1,100,000 with justification and a cash deposit of $250,000; a travel restriction to the Central District of California; GPS location monitoring; and home incarceration. (Dkt. 37 at 1-3.) By this Application, Baca seeks to exonerate the cash portion of his bond ($250,000) and remove the conditions of location monitoring, restriction on travel, and house arrest. (Id.)

The Court should deny defendant's Application. The concerns that motivated the Court to detain defendant in the first instance and, later, to impose a substantial bond and strict conditions of release remain. The combination of extensive conditions the Court imposed are necessary to mitigate the risk of nonappearance and serious concerns of danger that defendant poses.

**II. FACTUAL BACKGROUND**

**A. Factual Background Relating to Charges**

In February 2021, a witness made an alarming allegation that defendant John Abel Baca -- an active, experienced Inglewood Police

Department ("IPD") officer who was a member of IPD's drug task force -- had offered to sell the witness a kilogram of cocaine and two kilograms of "China White" heroin. (Palmer Decl., Ex. A. (Under Seal) ¶¶ 16.a, b, 17.c.) Baca also claimed to have access to an "unlimited" amount of black tar heroin. (Id. ¶ 16.c, 17.c.) According to witness, defendant Baca said he and "his team" would use confidential informants to identify potential drug transports and then would conduct routine traffic stops to steal drugs and large sums of cash. (Id. ¶¶ 16.b, c, 17.d, e.) They would divide the cash among the team and sell the drugs for profit. (Id.) Defendant Baca said he had many informants as a result of his time at IPD and would give the informants a 20% cut of the proceeds to report narcotics and large amounts of cash to him. (Id. ¶ 17.e.)

The FBI directed the witness to purchase cocaine from defendant Baca. Baca communicated with the witness on his personal telephone to set up the deal. (See CR 21-00575-JVS, Dkt. 1 ("Ekonomo Complaint") ¶¶ 14-18.) On April 29, 2021, defendant Baca provided a sample of cocaine (1.054 grams) to the witness during an audio- and video-recorded meeting. (Id. ¶¶ 20-27.) This transaction is charged in Count One of the indictment, violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C). After further communications, on May 4, 2021, defendant provided one kilogram of cocaine to the witness during an audio-recorded meeting in exchange for $22,000 in cash. (Id. ¶¶ 28-39.) This transaction is charged in Count Two of the indictment, violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii), which carries a five-year mandatory minimum term.

**B.  Subsequent Investigation and Criminal Charges Against One of Baca's IPD Informants**

After defendant's arrest, the government has continued its investigation and charged an additional defendant, Gerardo Ekonomo, Case No. SA CR 21-00575-JVS.  Ekonomo was one of defendant Baca's informants at IPD.  (Ekonomo Complaint ¶ 9.)  However, based upon IPD's official records, Ekonomo had no documented operations after defendant Baca signed him up as an informant.  (Id.)

In June 2021, Ekonomo traveled from Los Angeles to Las Vegas, where he was pulled over by the Las Vegas Police Department for a traffic violation.  (Id. ¶ 41.a.)  Ekonomo was driving.  (Id.)  In the car, police found three kilograms of heroin, which Ekonomo confirmed belonged to him.  (Id. ¶¶ 41.b, c, f.)  After Ekonomo's arrest, defendant Baca attempted to intervene on Ekonomo's behalf, including by telling the Las Vegas Police Department that Ekonomo was his informant (and identifying himself as Ekonomo's "handler") and suggesting that Ekonomo would "work off" the Las Vegas case.  (Id. ¶¶ 42-45.)  In fact, as noted above, Ekonomo was not conducting a law enforcement investigation for IPD.

Based upon Ekonomo's conduct, the government charged him with possession with intent to distribute approximately 3,260 grams of heroin (Count One, a ten-year mandatory minimum).  (CR 2:21-cr-00575-JVS, Dkt. 24 ("Ekonomo Indictment").)

On October 28, 2021, the FBI executed a search warrant at Ekonomo's residence.  (Id. ¶ 59.)  Buried in the yard of his residence, law enforcement found large quantities of drugs wrapped in black plastic, including 1,258 grams of fentanyl (Count Two, which carries a ten-year mandatory minimum) and approximately 462 grams of

3

heroin (Count Three, which carries a five-year mandatory minimum). (Ekonomo Complaint ¶¶ 59.a-c & Ekonomo Indictment.) The FBI also found indicia of drug trafficking at the residence, including heat-seal bags, an industrial roll of black plastic wrap (similar to the black plastic the drugs found in the backyard were wrapped in), and firearms and ammunition. (Ekonomo Complaint ¶¶ 59.c, d.) In a subsequent interview, Ekonomo claimed that he worked as an informant for defendant Baca and received authorization from Baca to transport the drugs to Las Vegas, purportedly as part of a law enforcement operation. (Id. ¶ 59.e.) Ekonomo said that defendant Baca assured him after his arrest that Baca would take care of the Las Vegas case. (Id.) At that time, Ekonomo claimed ignorance of the drugs in his yard. (Id. ¶ 59.f.)

### C. Baca's Substantial Financial Resources

In 2019, defendant Baca's salary from the Inglewood Police Department was around $168,000. (Ex. A ¶ 20.f.) According to the information defendant Baca provided Pretrial Services, his wife was employed as a teacher and earned approximately $90,000 annually. An analysis of defendant Baca's bank accounts revealed a large amount of money traveling through his bank accounts during the relevant period (from January 1, 2018 to March 31, 2021). That amount of money greatly outstripped his legitimate income. (Ex. A ¶ 20.g.) For example, during the relevant period, defendant Baca's checking account at the Credit Union of Southern California had approximately $2.04 million in deposits and transfers into the account and $2.05 million in withdrawals and transfers out of the account, resulting in an ending balance of $38,137.60 as of March 31, 2021. (Id.) His savings account at the Credit Union of Southern California Bank had

4

approximately $1.76 million in deposits and transfers into the account and $1.68 million in withdrawals and transfers out of the account, resulting in an ending balance of $100,009.68 as of March 31, 2021. (Id.) In addition, defendant Baca transferred approximately $64,000 in three separate transactions from a cryptocurrency Coinbase account to his Credit Union bank account and transferred approximately $72,000 in 19 separate transactions from his Credit Union bank account to a cryptocurrency Coinbase account. (Id.)

Defendant told a cooperating witness that he always had large amounts of cash. (Ex. A. ¶ 17.g.) He said he frequently traveled to Las Vegas casinos to gamble, in an effort to launder money inconspicuously. (Id.) At that time, defendant said he was not afraid of being caught because he told people at the bank that he enjoyed gambling, so he did not believe there would be any suspicious activity reports generated. (Id.)

Defendant's financial records corroborate this: they reveal frequent trips to and large transactions at Las Vegas casinos and large cash deposits and withdrawals. (Id. ¶¶ 20.h & i.) For example, on September 28, 2019, defendant Baca purchased $40,000 in casino chips in Las Vegas. (Id.) The same day, defendant Baca purchased another $30,600 in casino chips and subsequently cashed out $42,500 at another casino in Las Vegas. (Id.) Defendant Baca's financial records reflect numerous large cash deposits and withdrawals, which are not accounted for by his legitimate income. (Id. 20.i.) As just a few examples: on October 17, 2019, defendant Baca withdrew $15,000 in cash from the Credit Union of Southern California; on October 21, 2019, he deposited $20,000 in cash at the

same bank; and on January 15, 2021, he withdrew $40,000 in cash from the same bank. (Id.) In total, defendant deposited approximately $41,000 in cash into the Credit Union checking account and approximately $177,000 in cash into the Credit Union savings account during the relevant period. (Id.)

At the time of his arrest, defendant Baca reported $300,000 in bank accounts, around the same amount in investment accounts, as well as significant non-liquid assets, including properties and vehicles. Specifically, he had significant equity in several properties, including his primary residence in California (approximately $291,539 in equity, of which he put up $245,000 to satisfy his bond conditions); in a residence he owns with his mother in California (approximately $340,123 in equity, of which he put up $180,000 to satisfy his bond conditions); and a residence he owns (outright) in Arizona (worth approximately $425,000, of which he put up $425,000 to satisfy his bond conditions). He also owns three vehicles outright, including a 2018 Audi Q7, a 2001 Chevy pickup truck, and a 2012 Ferrari FF. (See Pretrial Services Report.)

**D. Procedural History Relating to Detention & Bond**

Defendant was arraigned on October 22, 2021. He was ordered detained based upon the Court's finding that no condition or combination of conditions would reasonably assure the appearance of the defendant as required and the safety of any person or the community.[1] (Dkt. No. 14 at 2.) In making that determination, the

---

[1] Defendant incorrectly states that "[i]t look Baca five months to arrange his release on bail." Dkt. 59-1 at 1. In fact, Baca was ordered detained pending trial. Nearly four months later, he moved for reconsideration, which the Court granted. He was released after perfecting his bond.

Court considered the nature and circumstances of the offenses charged, the weight of the evidence against the defendant, the history and characteristics of the defendant, and the nature and seriousness of the danger to any person or the community, pursuant to 18 U.S.C. § 3142(g). In detaining defendant, the Court based its conclusions on the following: (1) "As to the risk of non-appearance: substantial assets available to defendant/inadequate bail proffer; international connections and history of international travel; sophisticated means regarding ability to flee"; and (2) "as to danger and the community: instant allegations; government proffer regarding fear of CI(s) and CW(s)." (Id. at 3.)

On February 1, 2022, defendant filed an Application for Review/Reconsideration of the Court's Order of Detention, which included a proposed substantial cash and property bond. (Dkt. 26.) At the hearing on February 16, 2022, the Court ordered defendant Baca to be released based upon extensive conditions, including an appearance bond of $1,100,000 with justification and a cash deposit of $250,000; a travel restriction to the Central District of California; a bar on all contact, directly or indirectly, with any person who is a known witness of in the investigation; location monitoring; and home incarceration. (Dkt. 37 at 1-3.) In addition, the Court ordered defendant to have no contact with Ekonomo or any known witnesses from that related case, and that he was not permitted to "have someone else contact them on your behalf." (Id. at 4.)

**E. Instant Application**

On December 28, 2022, defendant Baca filed the instant Application for Review of Order Setting Conditions of Release Pursuant to 18 U.S.C. § 3142. (Dkt. 59-1.) By this Application,

7

Baca seeks to modify his bond in several respects. First, he seeks to exonerate the cash portion of his bond, that is, $250,000. (Application at 1.) Second, he seeks to "reform" his terms of release "to better accommodate his rehabilitation and the needs of his family and community." (Id.) These "reforms" include removal of his location monitoring bracelet, removal of travel restrictions, and release from house arrest. (Id.)

### III. ARGUMENT

The Court should deny defendant's Application. As a preliminary matter, the government is entitled to a rebuttable presumption that no condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of any person or the community. 18 U.S.C. § 3142(e)(2). While the government argued that defendant failed to rebut this presumption, the Court found that defendant was able to rebut that presumption during his second detention hearing because of the combination of conditions that included the significant cash and property bond and the strict conditions of release he now seeks to remove. The concerns that motivated the Court to detain defendant in the first instance and, later, to impose a substantial bond and strict conditions of release remain.

First, the nature and circumstances of the offense and strength of the evidence support the current cash bond, location monitoring, travel restriction, and home incarceration. That defendant abused his law enforcement status to steal and then sell drugs is concerning. That he recruited at least one person to assist in his lawless operation under the guise of enrolling him as an IPD confidential informant and then interceded with law enforcement when

8

he was caught (again using and abusing his law enforcement status), is deeply troubling.  The evidence against defendant for the charges in the Indictment is overwhelming and consists not only of witness statements but also substantial objective evidence like incepted calls, recordings of the charged deals, and toll records.

Defendant claims his bond should be modified because he does not pose a risk of flight.  But his argument ignores key facts that warrant the conditions imposed and remain compelling.  First, defendant has a history of international connections and travel,[2] and given his background as a law enforcement officer, possesses a deep knowledge of law enforcement methods that could allow him to successfully evade detection.  Second, defendant has substantial assets, many of which remain unaccounted for.  The government presented the financial analysis evidence outlined above at defendant's two previous detention hearings, including millions of dollars moving through his accounts (despite his legitimate household income dwarfing those sums), large cash deposits and withdrawals into and out of his accounts, his use of cryptocurrency, and his statements to a witness that he had large amounts of cash and laundered money through Las Vegas.  In neither detention hearing nor in the Application has defendant offered any explanation of the cash withdrawals and deposits, the substantial funds that moved through his accounts, or where those funds ended up.  The government recovered only a small amount of cash at his residence, and the cash that the cooperating witness paid defendant for the cocaine also

---

[2] Defendant claims to have "no ties outside the United States" but his wife has immediate and extended family in Mexico, and defendant admitted to traveling outside the United States on around 10 occasions, including visiting his wife's family member in Mexico.

9

remains unaccounted for. Even ignoring the vast amounts of unaccounted-for funds, defendant's claimed assets are significant and, absent a bond, could facilitate his flight.

In consideration of these facts, the Court has imposed the significant cash and property bond here, which appropriately ties up a significant portion of defendant's known assets and accordingly mitigates the serious risk of nonappearance he otherwise poses. Defendant's speculative and vague claims of mounting expenses (his counsel makes high-level claims and arguments, without any support, citation to records, or actual expenses) are simply insufficient to justify a modification here, especially because exonerating the cash portion of his bond would provide defendant access to funds that could aid his flight.

As to danger, the allegations (not only in the instant indictment but also in indictment in the related matter and the evidence proffered which underlies both) are very serious and show that defendant is willing and able to operate outside the law. The Application suggests that defendant's service as an officer should be credited, which ignores that he used and abused that very position of power and trust to steal and sell drugs and recruit others to participate in his crimes. Further, the concerns the government has expressed relating to the potential danger defendant poses to witnesses and cooperators are ongoing, if not heightened, as defendant's trial date approaches. Providing evidence against an experienced and well-connected police officer is extremely daunting and witnesses continue to express grave concerns for their safety. Defendant's and his counsel's claims that he has no history of violence belied by the record: he has a conviction for battery.

10

(Pretrial Services Report at 4; Application at 3 ("I have no history of violence."), 8 ("John Baca has no history of violence").) While the conviction is old (from 1996), it demonstrates that defendant is capable of resorting to violence.

Thus, the extensive conditions of release that the Court has imposed are necessary to mitigate the serious concerns of danger to others. Exonerating defendant's cash bond and removing his location monitoring, travel restrictions, and home incarceration would not adequately protect the public or the potential witnesses in this case. What's more, although defendant claims location monitoring and home incarceration have hampered his treatment, his Pretrial Services Officer has said (and the Application itself also confirms) that defendant has successfully obtained medical, psychological, and substance-abuse treatment while subject to very conditions he now seeks to remove. Further, he is permitted to attend church services under his current conditions.

Finally, defendant's desire to obtain residential treatment in Arizona does not justify removal of location monitoring or home incarceration. While it is laudable that defendant is addressing his substance-abuse and post-traumatic stress disorder issues, he fails to explain why he cannot obtain treatment in the Los Angeles area instead of at a residential facility in Arizona. According to the Application and defendant's Pretrial Services Officer, defendant has successfully completed outpatient substance-abuse treatment and psychological therapy and has been maintaining his sobriety. To the extent defendant would like to avail himself of additional treatment, the government submits, and Pretrial Services has advised, that there are numerous programs in Los Angeles that provide the type of

11

treatment defendant seeks (that is, dual-diagnosis treatment that would simultaneously address both his mental health and substance abuse issues).  Defendant's Pretrial Services Officer has indicated that she shared these views with the defendant and that defendant's counsel did not contact her about the Arizona program before filing the instant Application.  Put simply, defendant can avail himself of treatment while complying with the current conditions of release.

Thus, the Application presents no new evidence that justifies modifying the conditions of defendant's release.  The Court should deny it.

**IV. CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny the Application in its entirety.